UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00120-GNS

ERICK AMOX                                                                              PLAINTIFF

v.

SOUTH KENTUCKY RURAL ELECTRIC
COOPERATIVE CORPORATION                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 28). The motion is now ripe for adjudication. For the reasons that follow, Defendant's motion is **GRANTED**.

### I.     BACKGROUND

Plaintiff Erick Amox ("Amox") worked as an at-will employee for Defendant South Kentucky Rural Electric Cooperative Corporation ("South Kentucky") for more than twelve years. (Def.'s Mem. Supp. Mot. Summ. J. 1, DN 28-1). Amox first worked as an apprentice lineman and then as a lead lineman, and held a commercial driver's license ("CDL") as part of his work. (Amox Dep. 28:19-31:15, 41:6-42:1, 43:22-44:18, 58:8-59:3, Mar. 12, 2019, DN 22; Def.'s Mem. Supp. Mot. Summ. J. 1-3; Pl.'s Resp. Def.'s Mot. Summ. J. 1, 6, DN 29). On June 13, 2018, Amox was subjected to a drug test,[1] which came back positive for Tetrahydrocannabinol ("THC"). (Def.'s Mem. Supp. Mot. Summ. J. 1-2; Pl.'s Resp. Def.'s Mot. Summ. J. 3; Holt Dep. 35:5-18, Aug. 29, 2019, DN 23). Amox was then terminated. (Def.'s Mem. Supp. Mot. Summ. J. 3; Pl.'s Resp.

---

[1] Amox continuously characterizes this drug test as "illegal" yet provides no explanation for that characterization. (Pl.'s Resp. Def.'s Mot. Summ. J. 2-6, 9-10, 12).

Def.'s Mot. Summ. J. 4). Amox claims that cannabidiol ("CBD") oil, which he took for "extensive joint pain and inflammation in his hands and knees", caused his drug test to come back positive. (Amox Dep. 79:22-80:20; Pl.'s Resp. Def.'s Mot. Summ. J. 3).

Amox brought this action in Kentucky state court on August 8, 2018, asserting a claim of wrongful termination. (Notice Removal Ex. A, at 3, 5-6, DN 1-1). Amox also claimed a violation of procedural due process under the Fourteenth Amendment, which was the basis for South Kentucky's removal to this Court. (Notice Removal Ex. A, at 5-6; Notice Removal 2, DN 1). Amox has since withdrawn his procedural due process claim after recognizing its futility, so all that remains for resolution is South Kentucky's motion for summary judgment on Amox's wrongful termination claim. (Pl.'s Resp. Def.'s Mot. Summ. J. 7; Def.'s Mot. Summ. J. 1, DN 28).

## II.    JURISDICTION

Jurisdiction in this action is based on federal question and supplemental jurisdiction. Amox originally asserted a violation of procedural due process under the Fourteenth Amendment to the United States Constitution. *See* 28 U.S.C. § 1331; (Notice Removal Ex. A, at 5-6). Supplemental jurisdiction affords jurisdiction over Amox's state law wrongful termination claim. *See* 28 U.S.C. § 1367(a); (Notice Removal Ex. A, at 4-5).

As Amox has withdrawn his procedural due process claim, all that remains is Amox's state law claim. Courts are strongly encouraged to consider the issue of remand to state court after all federal claims have been dismissed and diversity jurisdiction is not present.[2] *See Arrington v. City of Raleigh*, 369 F. App'x 420, 421 (4th Cir. 2010) ("[T]he district court should have remanded the

---

[2] Diversity jurisdiction is not present here because Amox is a resident of Kentucky, and South Kentucky is incorporated in and has its principal place of business in Kentucky. (Notice Removal Ex. A, at 3); *see* 28 U.S.C. § 1332(a)(1), (c)(1).

case to state court upon the dismissal of all federal claims, even in the absence of a motion from the parties that it do so."). "A district court's decision whether to exercise [] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations omitted). The Sixth Circuit in *Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir. 2010), explained the proper analysis:

> "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."
>
> There are, however, circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed. In *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195 (6th Cir. 2004), for example, the court found that the following factors weighed in favor of retaining supplemental jurisdiction over the remaining state-law claims: (1) the plaintiff had engaged in forum manipulation by deciding to dismiss his federal-law claims only after the case had been on the district court's docket for 11 months, (2) the parties had completed discovery, and (3) the defendants' summary-judgment motions were ripe for decision. Moreover, the district court "was familiar with the facts of the case and already had invested significant time in the litigation." This court therefore concluded that the district court had properly exercised supplemental jurisdiction over the remaining state-law claims.

*Id*. at 952 (internal citations omitted) (citation omitted). *Gamel* also pointed to evaluation of the *Carnegie-Mellon* factors in determining whether the district court should retain supplemental jurisdiction over the claims: "the values of judicial economy, convenience, fairness, and comity." *Id*. at 951-52 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Application of *Gamel*, *Harper*, and *Carnegie-Mellon* favors retaining jurisdiction over this case. This case has been on the Court's docket since August 28, 2018, discovery is complete, and South Kentucky's motion for summary judgment is ripe for decision. (Notice Removal 4; Scheduling Order 2, DN 8; Def.'s Reply Mot. Summ. J. 7, DN 30). As such, judicial economy and convenience weigh in favor of retaining jurisdiction over this case. As explained below , the issues on summary judgment are straightforward and require simple application of Kentucky law

3

to the extent it is applicable, so fairness and comity are seemingly inapplicable here. For these reasons, the Court will retain jurisdiction over this case.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

# IV.    DISCUSSION[3]

As the Kentucky Supreme Court recently noted regarding the tort of wrongful discharge under Kentucky law:

> Ordinarily, an at-will employee may be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible." However, there is "a narrow public policy exception" to the terminable-at-will doctrine, which is subject to the following limitations:
>
> 1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law[;]
>
> 2) That policy must be evidenced by a constitutional or statutory provision[;] [and]
>
> 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.
>
> Only three circumstances exist in which a discharge will be actionable as contrary to public policy: (1) when there are "explicit legislative statements prohibiting the discharge," (2) when "the alleged reason for the discharge . . . was the employee's failure or refusal to violate a law in the course of employment," or (3) when "the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." Further, the public policy involved must have an employment-related nexus.

*Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650, 652 (Ky. 2019) (internal citations omitted) (citation omitted).

Amox asserts that he has an actionable right against South Kentucky for wrongful termination because public policy in Kentucky establishes an affirmative right to use CBD oil outside of the workplace that an employer cannot infringe upon. (Pl.'s Resp. Def.'s Mot. Summ. J. 7-10). Amox points to the Kentucky legislature's declaration of hemp as an agricultural crop and the removal of CBD products derived from industrial hemp from the list of controlled

---

[3] The parties agree that Kentucky state law forms the substantive law governing Amox's wrongful termination claim. (Def.'s Mem. Summ. Mot. Summ. J. 6-8; Pl.'s Resp. Def.'s Mot. Summ. J. 7-12).

substances in Kentucky as statutory pronouncements of his uninfringeable right to use CBD oil outside of the workplace. *See* KRS 260.852; KRS 218A.010(28); (Pl.'s Resp. Def.'s Mot. Summ. J. 8). Amox's argument is similar to the one the Kentucky Supreme Court rejected in *Marshall*.

In *Marshall*, the plaintiff was terminated allegedly for informing her coworkers that one of their supervisors was a registered sex offender. *Marshall*, 575 S.W.3d at 651. The plaintiff argued that her right to inform her coworkers of this alleged fact was protected by the Sex Offender Registration Act. *Id*. at 652. Specifically, the plaintiff pointed to KRS 17.510(8), which provides that a sex offender must sign a sex offender registration form that shall include registrant information for "public dissemination," and KRS 17.580(4)(b), which provides that "[a]ny person . . . acting in good faith in disseminating . . . information previously disseminated by the Department of Kentucky State Police shall be immune from criminal and civil liability for the dissemination . . . ." *Marshall*, 575 S.W.3d at 652 (quoting KRS 17.510(8); KRS 17.580(4)(b)). The Court in *Marshall*, however, refused to "find an explicit *right* to disseminate information from the [sex offender] registry in a private workplace" because there was no "employment-related nexus" between the statute and the workplace to form the basis for a wrongful termination suit. *Marshall*, 575 S.W.3d at 655-56.

The Court in *Marshall* reviewed extensive wrongful termination precedent and found that "[a]ll of the statutory rights previously recognized by the Court, specifically in [other cases], were explicitly stated in the statute by language such as 'Employees may, free from restraint or coercion' and 'No person, including but not limited to an employer . . . shall prohibit.'" *Id*. at 656. Because no such language existed in KRS 17.510(8) and 17.580(4)(b), the Court refused to find an employment-related nexus:

> As a matter of principle, this Court may disapprove of the firing of an employee merely for disclosing to fellow employees information contained on the sex

6

> offender registry. We cannot, however, find the *right* to disclose the information in the Sex Offender Registration Act. Should members of the legislature agree with our disapproval of a termination on these grounds, it is their duty to include a right to disseminate this information in the statutes themselves. The statute must make clear that it intends to protect employees in their employment situation. As much as we may wish to, this Court cannot, by judicial fiat, insert that right into the statutory scheme.
>
> Any right that we find in the Sex Offender Registration Act is implicit and intuitive, as opposed to an explicit right related to employment as required by [Kentucky law].

*Id*. at 655-56 (citations omitted).

The same situation described in *Marshall* exists in the present case—there is no language in the statutes Amox points to establishing any requisite employment-related nexus. KRS 260.852 articulates the Kentucky General Assembly's policy of promoting "hemp [as] a viable agricultural product in the Commonwealth", and KRS 218A.010(28) states that the term "marijuana" does not include CBD products used for certain purposes. Neither statute, however, discusses an employee's ability to use CBD oil outside of the workplace without consequences, prohibits an employer from terminating an employee for using CBD oil, or even hints at the regulation of the employer-employee relationship. Simply put, there is no indication that the Kentucky General Assembly intended to prevent South Kentucky from terminating Amox for failing a drug test stemming from his use of CBD oil. *See also Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 431-32, 434-37 (6th Cir. 2012) (holding that the Michigan Medical Marihuana Act legalizing medical marijuana "does not impose restrictions on private employers" from firing employees legally using medical marijuana outside of work).

Amox also points to KRS 336.700(2), which provides an employer cannot "diminish any existing . . . right . . . to which [an] employee . . . would otherwise be entitled under any provision of the Kentucky Revised Statutes[,]" and KRS 446.070, which allows for a private right of action

for the violation of a statute, as further support for the sustainability of his wrongful termination claim. This assertion lacks merit, however, because claims under those statutes must be predicated on the existence of a right to use CBD oil outside of the workplace without employment-related consequences, which, as discussed above, does not exist. Furthermore, use of those general statutes to establish the requisite employment-related nexus would be directly contrary to the Kentucky Supreme Court's specificity requirement discussed in *Marshall*. Amox's argument is that an employee can never be fired for engaging in *any* activity outside of work that is not expressly prohibited by Kentucky law would eviscerate employment at-will in Kentucky. In light of the Kentucky Supreme Court's recent decision in *Marshall*, this argument is rejected.

As a final matter, in his response to South Kentucky's motion for summary judgment, Amox attempts to assert an entirely different rationale for his wrongful discharge claim which is not in his Complaint and that he was actually precluded from asserting in this case by the Magistrate Judge. (Pl.'s Mot. Modify Scheduling Order 1-2, DN 11; Order 2-5, DN 14). On March 5, 2019, four months after the scheduling order deadline for amending pleadings had passed, Amox sought to amend his Complaint to add "an additional cause of action for Wrongful Discharge Contrary to Public Policy or Retaliatory Discharge . . . ." (Order 4; Pl.'s Mot. Modify Scheduling Order ¶ 5; Proposed First Am. Compl. ¶¶ 22-28, DN 11-1). As the basis for this claim, Amox asserted that the reason given by South Kentucky for his termination, i.e. the failed drug test, was pretext and that the true reason for Amox's termination was his disclosure of South Kentucky's potential safety violations. (Proposed First Am. Compl. ¶¶ 22-28; Pl.'s Resp. Def.'s Mot. Summ. J. 10-12). The Magistrate Judge, however, found that Amox failed to show "good cause" as required by Fed. R. Civ. P. 16(b)(4) to amend the scheduling order and denied Amox's request to add that claim. (Magistrate Judge Order 3-5).

Now, in his response to South Kentucky's motion for summary judgment, Amox is attempting to circumvent the Magistrate Judge's Order by couching his original wrongful termination claim as a general "claim simply alleg[ing] that Defendant . . . wrongfully terminated his employment against the public policy of Kentucky" and the basis for that retaliatory termination claim as support for his more general argument that he was wrongfully terminated. (Pl.'s Resp. Def.'s Mot. Summ. J. 10). As mentioned, however, Amox's original Complaint in this case makes no mention of having been terminated for speaking up about safety concerns in the workplace. (Pl.'s Resp. Def.'s Mot. Summ. J. 10-12). Amox cannot now assert in his response to South Kentucky's motion for summary judgment what he failed to allege in the Complaint and was precluded from asserting by a previous court order. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787-89 (6th Cir. 2005) (affirming the district court's refusal to consider a new claim asserted for the first time in a response to a motion for summary judgment because the plaintiff failed to plead the claim and the defendants never had notice of the claim); *see also Edwards v. Niles Sales & Serv., Inc.*, 439 F. Supp. 2d 1202, 1224-25 (S.D. Fla. 2006), *overruled on other grounds by Lewis v. City of Union City*, 918 F.3d 1213, 1217-18 (11th Cir. 2019) (holding that plaintiff was precluded from asserting additional bases for a claim not previously asserted in the complaint in a response to a motion for summary judgment) (citations omitted). As such, the Court will not consider Amox's allegations pertaining to his retaliation claim.[4]

---

[4] Even if the Court were to consider Amox's allegation that South Kentucky terminated him as retaliation for reporting safety violations, the factual basis for that allegation is lacking. Amox claims that his June 25, 2018, termination stemmed from animus over a 2016 confrontation with South Kentucky management regarding a potential safety violation. (Pl.'s Resp. Def.'s Mot. Summ. J. 2-4, 11-12). The period of time between these two actions undermines Amox's assertion. *See generally Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an

Because no Kentucky statute establishes Amox's right to use CBD oil outside of work without interference by his employer, Amox cannot maintain a wrongful termination claim on this basis. As such, summary judgment will be granted in favor of South Kentucky and Amox's claims against South Kentucky will be dismissed with prejudice.[5]

## V.     CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 28) is **GRANTED**. Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**. The Clerk is directed to strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 31, 2020

cc:     counsel of record

---

adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' Action taken (as here) 20 months later suggests, by itself, no causality at all." (internal citations omitted))). Furthermore, deposition testimony from two South Kentucky employees suggests that other employees, who were not terminated by South Kentucky, were actually more vocal about the incident than Amox. (Staton Dep. 48:2-21, Aug. 23, 2019, DN 25; Holt Dep. 13:5-14:17). The fact that employees who were more vocal about the 2016 incident were not fired seriously undermines Amox's retaliation argument.

[5] *See Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (dismissing claim with prejudice on motion for summary judgment after recognizing that "[s]ummary judgment . . . is the procedural equivalent of a trial and is an adjudication of the claim on the merits." (citation omitted)).